1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10   AMPARO VALLEJO,                )   Case No. CV 07-1644-PJW
                                    )
11             Plaintiff,           )
                                    )   MEMORANDUM OPINION AND ORDER
12        v.                        )
                                    )
13   MICHAEL J. ASTRUE,             )
     COMMISSIONER OF THE            )
14   SOCIAL SECURITY ADMINISTRATION, )
                                    )
15             Defendant.           )
     _____)

16

17        Before the Court is Plaintiff's appeal of a decision by Defendant

18   Social Security Administration ("the Agency"), denying her application

19   for supplemental security income ("SSI") benefits.  Plaintiff claims

20   that the administrative law judge ("ALJ") erred when he: (1)

21   improperly evaluated Plaintiff's residual functional capacity; (2)

22   rejected Plaintiff's credibility; (3) failed to present a complete

23   hypothetical question to the vocational expert; (4) improperly

24   identified Plaintiff's past relevant work and failed to inquire about

25   a possible conflict between the Dictionary of Occupational Titles

26   ("DOT") and the vocational expert's testimony with respect to the

27   requirements of Plaintiff's past relevant work; and (5) failed to

28   develop the record by not ordering an additional consultative

1  examination of Plaintiff's carpal tunnel syndrome.  For the reasons
2  discussed below, the Agency's decision is REVERSED and the action is
3  REMANDED for further proceedings consistent with this opinion.

4      Plaintiff contends that the ALJ's assessment of Plaintiff's
5  residual functional capacity was improper because it failed to include
6  any limitations on the use of Plaintiff's hands, even though there was
7  evidence that Plaintiff would be restricted in using her wrists and
8  hands to grasp, push and pull, and in performing fine manipulation
9  activities.  (Joint Stipulation at 19-21.)  Because the ALJ's
10  assessment was substantially supported by the record, this claim does
11  not warrant remand.

12      A claimant's residual functional capacity reflects what she can
13  still do despite her limitations.  *See* 20 C.F.R. § 404.1545.  In
14  determining residual functional capacity, the ALJ must first identify
15  the individual's functional limitations or restrictions and assess her
16  work-related abilities on a function-by-function basis, including the
17  functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and
18  416.945.  The ALJ must then consider the limiting effects of all of a
19  claimant's impairments, even those that were not severe.  20 C.F.R.
20  § 404.1545(e); *see also* Social Security Ruling  ("SSR") 96-8p at 5.
21  Only then may the ALJ express the claimant's residual functional
22  capacity in terms of exertional level, i.e., sedentary, light, medium,
23  heavy, or very heavy work.  *See* SSR 96-8p.  The ALJ is required to
24  make factual findings to support his residual functional capacity
25  assessment.  *See* SSR 82-62.

26      Here, after reviewing the medical evidence, the ALJ determined
27  that Plaintiff's hypertension, hypercholesterolemia, degenerative disc
28  disease, and obesity were severe impairments, but that they did not

2

singly or in combination meet or equal any Listed impairment.  (AR
26.)  The ALJ then assessed Plaintiff's residual functional capacity,
concluding that Plaintiff could lift 20 pounds occasionally and ten
pounds frequently; stand, walk, and sit for six hours in an eight-hour
workday; occasionally climb, stoop, squat; and frequently kneel,
crawl, and balance.  (AR 29.)  The ALJ noted that this residual
functional capacity assessment "comports with the assessments of each
of the examining sources and the medical expert," but "departs from
the excessive and unsupported pronouncement of Dr. [Thomas] Grogan,
[Plaintiff's] medical source."  (AR 29.)

        The ALJ's residual functional capacity assessment is supported by
the opinions of the examining physician and testifying medical expert.
On March 29, 2004, Dr. Mehran Sourehnissani examined Plaintiff.  (AR
153-58.)  Dr. Sourehnissani noted that Plaintiff complained of back
pain that was aggravated by prolonged standing and walking and lifting
heavy objects, but relieved "to some extent by rest and taking pain
medication."  (AR 153.)  He also noted Plaintiff's complaints of wrist
pain, radiating to her hands, but that Plaintiff denied a history of
dropping objects.  (AR 154.)  Upon examination, Dr. Sourehnissani
noted that Plaintiff's wrists were tender to the touch but had no
swelling, and that range of motion was normal "but productive of
discomfort."  (AR 156.)  The results of two tests used to diagnose
carpal tunnel syndrome (the Phalen Test and the Tinel Test) were
negative.  (AR 156.)  Plaintiff's hands were tender over the joints
but he found no muscular atrophy, although he noted that "[g]rip
strength is borderline."  (AR 156.)  In his functional assessment, Dr.
Sourehnissani concluded that Plaintiff could lift and carry 20 pounds
occasionally and ten pounds frequently, could stand, walk, and sit six

3

hours in an eight-hour workday, and would be limited to only occasional climbing, stooping, kneeling, or crouching. (AR 158.) Dr. Sourehnissani assessed no functional limitations with respect to Plaintiff's use of her arms and hands.

The reviewing state agency single-decision maker Ms. Imelda Fuentes concurred with Dr. Sourehnissani's assessment, noting that the Tinel Test and Phalen Test results were negative and determined that Plaintiff had no manipulative limitations in the use of her arms and hands. (AR 164.) Testifying medical expert Dr. Harvey Alpern also agreed with the residual functional capacity limitations assessed by Dr. Sourehnissani. (AR 289.) At the September 20, 2005 hearing before the ALJ, Dr. Alpern questioned the propriety of Dr. Grogan's diagnosis of carpal tunnel syndrome because nerve conduction studies (which were required for this diagnosis) had not been carried out. (AR 286-87.) Dr. Alpern further testified that a reduction in grip strength was insufficient in itself to confirm carpal tunnel syndrome. (AR 287.) Although Dr. Alpern acknowledged that the carpal tunnel diagnosis was possible, (AR 287), he testified that Plaintiff's impairments would no more than minimally involve work restrictions, and specifically rejected the restrictions, including the manipulative limitations, contained in the medical source statement completed by Dr. Grogan on July 11, 2004. (AR 288.)

In contrast to the opinions of Dr. Sourehnissani, Dr. Alpern, and Ms. Fuentes, orthopedic surgeon Dr. Thomas Grogan examined Plaintiff on November 5, 2003, and found a positive Tinel's sign "consistent with carpal tunnel syndrome" and a grip strength that was only 30% of expected normal values. (AR 140.) Dr. Grogan diagnosed carpal tunnel syndrome in both wrists. (AR 141.) Dr. Grogan also found that

4

1   Plaintiff could sit no more than four hours, stand no more than two
2   hours, and walk no more than one hour in an eight-hour workday; could
3   never lift or carry objects weighing five pounds or greater; and could
4   not use her hands for grasping, pulling and pushing, or fine
5   manipulation.  (AR 144.)  In a physical capacities evaluation
6   completed on July 8, 2004, Dr. Grogan opined that Plaintiff could sit
7   for up to three hours, stand for up to two hours, and walk for up to
8   one hour in an eight-hour workday.  (AR 255.)  Dr. Grogan also found
9   that Plaintiff could never lift or carry more than five pounds, was
10  restricted to grasping only with her left hand, but could not pull,
11  push, or perform fine manipulation with either hand.  (AR 255.)  In a
12  musculoskeletal assessment form completed on July 9, 2004, Dr. Grogan
13  opined that Plaintiff was completely unable to lift, carry, push, or
14  pull.  (AR 254.)  Finally, on July 11, 2004, Dr. Grogan completed a
15  medical source statement in which he opined that Plaintiff could lift
16  and carry no more than ten pounds; could stand or walk no more than
17  two hours, and sit no more than six hours, in an eight-hour workday;
18  would be restricted in pushing and pulling; and would be limited to
19  only occasional reaching, and to only frequent handling, fingering,
20  and feeling.  (AR 203-07.)

21      In his decision, the ALJ specifically rejected Dr. Grogan's
22  functional limitation assessment because Dr. Grogan provided no
23  clinical evidence to support his assessment, because the assessment
24  was inconsistent with the other medical evidence, and because it
25  appeared to be based on Plaintiff's subjective complaints, which the
26  ALJ discounted.  (AR 29-30.)  Plaintiff claims that this was error.
27  The Court disagrees.

28

1   Dr. Sourehnissani's opinion, which was based on independent

2   clinical findings that differed from those of Dr. Grogan, constitutes

3   substantial evidence, and it was solely the province of the ALJ to

4   resolve the conflict in the medical record between these opinions.

5   *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

6   Additionally, the ALJ was entitled to rely on the medical expert's

7   opinion that Plaintiff's hand and wrist pain did not impose any

8   additional functional restrictions on her ability to work.  *Morgan v.*

9   *Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (holding

10  that opinion of nonexamining testifying medical advisor serves as

11  substantial evidence where consistent with other evidence in record

12  and where ALJ sets out "detailed and thorough summary of the facts and

13  conflicting clinical evidence") (quoting *Magallenes v. Bowen*, 881 F.2d

14  747, 750 (9th Cir. 1989).

15  Although the ALJ found that Plaintiff suffered from various

16  severe impairments, "[t]he mere existence of an impairment is

17  insufficient proof of a disability."  *Matthews v. Shalala*, 10 F.3d

18  678, 680 (9th Cir. 1993).  In any case, the ALJ did not find that

19  Plaintiff suffered from a severe wrist or hand impairment.  Plaintiff

20  has failed to demonstrate how the clinical observations of Dr.

21  Sourehnissani and the testimony of Dr. Alpern necessarily translated

22  into functional limitations, given that neither physician imposed any

23  functional limitations on the use of her arms or hands.  *See*, *e.g.*,

24  *Barnett v. Barnhart*, 362 F.3d 1020, 1022-23 (8th Cir. 2004) (affirming

25  denial of benefits, even though physician's examination revealed

26  reduced motion and strength in the hand and wrist, and positive

27  Tinel's and Phalen's signs, where physician "did not limit the work

28  [the claimant] could perform and did not opine [the claimant's]

6

1   impairments impacted her ability to perform her past occupations").
2   Because substantial evidence supports the ALJ's assessment of
3   Plaintiff's residual functional capacity, this claim does not warrant
4   remand.

5        Next, Plaintiff contends that the ALJ failed to provide clear and
6   convincing reasons for discrediting her testimony. (Joint Stipulation
7   at 38-40.)  In a Disability Report Form filled out on November 25,
8   2003, Plaintiff alleged that she could not sit or stand for more than
9   four hours, walk for more than one hour, lift or carry any weight, use
10  leg or arm controls in a repetitive motion, squat, crawl, or climb at
11  all, or bend or reach more than occasionally. (AR 99.)  Additionally,
12  at the September 20, 2005 hearing before the ALJ, Plaintiff testified
13  that she could not perform her past work as a pizza packer because of
14  pain in her fingers and arms. (AR 280.)  She also testified that her
15  "whole body has pain" that is always present. (AR 280.)  Plaintiff
16  claimed that she did not participate in any household activities. (AR
17  282.)

18       An ALJ is not required to believe every allegation of disabling
19  pain or other non-exertional impairment. *Orn v. Astrue*, 495 F.3d 625,
20  635 (9th Cir. 2007).  However, when the claimant has produced
21  objective medical evidence of an impairment which could reasonably be
22  expected to produce the symptoms alleged and there is no evidence of
23  malingering, the ALJ can only reject the claimant's testimony
24  concerning the severity of her symptoms by citing specific, clear, and
25  convincing reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273,
26  1281-84 (9th Cir. 1996).  In making a credibility determination, the
27  ALJ may take into account, among other things: (1) ordinary
28  credibility evaluation techniques, (2) unexplained or inadequately

7

1  explained failure to seek or follow treatment, and (3) the claimant's
2  daily activities.  *Id.*  If the ALJ's credibility finding is supported
3  by substantial evidence in the record, the Court may not engage in
4  second-guessing.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir.
5  2002).

6      The ALJ discounted Plaintiff's pain testimony to the extent that
7  it suggested functional limitations in excess of his residual
8  functional capacity assessment for several reasons.  (AR 30.)  First,
9  the ALJ found that Plaintiff had been treated only conservatively for
10 her pain and that she had never been referred to a pain clinic or for
11 physical therapy despite her allegations of disabling pain.[1]  (AR 30.)
12 This reason is clear and convincing, and supported by substantial
13 evidence in the record.  For that reason, the ALJ's credibility
14 finding will be upheld.

15     Although Plaintiff testified that she experienced pain in her
16 whole body, and particularly in her fingers and arms, (AR 280), the
17 record contains no evidence that Plaintiff received any treatment for
18 pain, other than non-prescription pain medicine, which Plaintiff
19 testified "takes [the pain] down a little bit."  (AR 108, 280.)  In a
20 pain questionnaire filled out on February 12, 2004, Plaintiff
21 indicated that she felt "chronic" pain "throughout [the] skeletal
22 system."  (AR 108.)  She also stated that she would have to stop
23 activities "every 30-45 min[utes]" because of her pain.  (AR 110.)
24 Nevertheless, Plaintiff indicated that she took only Ibuprofen for

25

26     [1]  The ALJ also found no evidence that Plaintiff had experienced
27 side effects from her medication, although this does not appear to
   have been an independent basis for discounting Plaintiff's
28 credibility.  (AR 30.)

1    pain, which relieved it "some," and which caused no side effects.  (AR
2    108.)  Plaintiff also testified that she wore supports to relieve the
3    pain in her hands and wrists.  (AR 109, 282-83.)  In a medication list
4    dated September 20, 2005, Plaintiff noted that she was taking Tylenol
5    for "pain/arthritis," in addition to medications for hypertension,
6    cholesterol, "insomnia/depression," "ulcer/gastritis," and
7    "osteoporosis/weak bones."  (AR 263.)  Treatment records from Arroyo
8    Vista Family Health Center dated between November 12, 2002, and July
9    6, 2004, contain almost no mention of Plaintiff's wrist or hand pain,
10   except for an initial diagnosis of carpal tunnel syndrome on November
11   26, 2002.  (AR 233.)  Indeed, Plaintiff specifically denied joint pain
12   on April 1, 2003, (AR 229), and a physical examination conducted on
13   December 15, 2003, noted that Plaintiff's wrist and hands were
14   "normal."  (AR 221.)

15        Although Plaintiff now argues that "there was no evidence in the
16   record to show that any more aggressive care was appropriate or
17   recommended and the [medical expert] testified that her medical care
18   has been appropriate," and that "the most likely reason that Plaintiff
19   attended no pain clinic or physical therapy was due [to] her lack of
20   insurance and her indigency", (Joint Stipulation at 40), the ALJ was
21   entitled to contrast the record of conservative treatment with
22   Plaintiff's account of disabling pain as a reason to discount her
23   credibility.  *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999)
24   ("[T]he ALJ properly considered [the treating physician's] failure to
25   prescribe ... any serious medical treatment for this supposedly
26   excruciating pain"); *see also Tidwell v. Apfel*, 161 F.3d 599, 602 (9th
27   Cir. 1998) (affirming ALJ's rejection of pain testimony based, in
28   part, on evidence that claimant received generally conservative

treatment and that medication relieved the alleged symptoms).
Furthermore, it is clear that the ALJ relied on the lack of evidence
that more aggressive pain treatment was indicated or recommended,
rather than on Plaintiff's failure to obtain such treatment, to
support his credibility finding.  (AR 30.)  Plaintiff's speculative
argument that she would have been unable to pay for such treatment had
it been prescribed, (Joint Stipulation at 40), is misplaced and does
not refute the ALJ's finding.

        Additionally, the ALJ found that the objective medical evidence
did not support Plaintiff's allegations of disabling pain.  (AR 30.)
Although the ALJ could not reject her testimony on this basis alone,
*see*, *e.g.*, *Robbins v. Social Security Administration*, 466 F.3d 880,
883 (9th Cir. 2006) (holding that ALJ "may not disregard [testimony]
solely because it is not substantiated affirmatively by objective
medical evidence"), he was permitted to use the absence of objective
medical evidence substantiating Plaintiff's complete inability to work
due to her pain as an additional reason to discredit her testimony.
*See Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001)
(upholding ALJ's credibility determination in part because evaluations
revealed little evidence of disabling impairment).  For these reasons,
the Court concludes that the ALJ's reasons for rejecting Plaintiff's
credibility are specific, clear, and convincing and will be affirmed.

        Plaintiff next contends that the ALJ improperly relied on the
vocational expert's testimony that Plaintiff could work, which was
based on an incomplete hypothetical question.  (Joint Stipulation at
31-33.)  This argument is rejected.

        At the hearing, the ALJ asked the vocational expert to consider
an individual with Plaintiff's vocational profile who could lift up to

20 pounds occasionally and ten pounds frequently; stand, walk, and sit up to six hours in an eight hour day; occasionally stoop, squat, and climb; and frequently kneel, balance, and crawl.  (AR 292.)  In other words, this hypothetical assumed that the hypothetical worker had the same residual functional capacity assessment that the ALJ ultimately determined Plaintiff had.  (*See* AR 29.)  The vocational expert responded that that individual could perform Plaintiff's past relevant work as she actually performed it, but not as it is customarily performed in the labor market.  (AR 292-93.)  The ALJ relied on the vocational expert's response to this hypothetical to find that Plaintiff could perform her past relevant work.[2]  (AR 30.)  Plaintiff now argues that, because this hypothetical did not include any limitations on the use of her hands, it was deficient.  (Joint Stipulation at 32-33.)  Again, the Court disagrees.

     A hypothetical question that does not include all of a claimant's restrictions is legally inadequate.  *Robbins*, 466 F.3d 886 (9th Cir. 2006).  The ALJ may, however, properly limit a hypothetical to only those restrictions that are supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005).  Because, as discussed above, the ALJ's residual functional capacity assessment was supported by substantial evidence, he did not err in failing to include restrictions on the use of Plaintiff's hands/arms in the hypothetical question.

---

[2]   The vocational expert testified in response to a second hypothetical, which incorporated greater limitations on the individual's ability to lift, stand, walk, push, pull, kneel, crouch, crawl, stoop, and reach, that such an individual could not perform Plaintiff's past relevant work.  (AR 293.)

1    Plaintiff next contends that the ALJ's step-four determination

2    that Plaintiff could perform her past relevant work was erroneous

3    because the ALJ failed to make proper findings concerning the

4    requirements of that work. (Joint Stipulation at 16-18.)  For the

5    following reasons, the Court concludes that the ALJ failed to clarify

6    the lifting and carrying requirements for Plaintiff's past work as a

7    frozen pizza packer and, therefore, remand is required.

8    At step four of the sequential evaluation process, the claimant

9    has the burden of proving that she can no longer perform her past

10   relevant work. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001);

11   20 C.F.R. §§ 404.1520(e) and 416.920(e).  "[T]he ALJ still has a duty

12   to make the requisite factual findings to support his conclusion."

13   *Pinto*, 249 F.3d at 844.  Even so, the ALJ is only required to make

14   such findings regarding *either* a claimant's past relevant work as

15   generally performed *or* as actually performed. *Id*. at 845.

16   In evaluating the demands of a claimant's past relevant work as

17   it was actually performed, the ALJ may look to the claimant's

18   vocational report or to the claimant's testimony. *Id*.  In order for

19   the ALJ to find that a claimant is able to perform her past work, she

20   must be able to perform *all* of the tasks associated with it. *See*

21   *Valencia v. Heckler*, 751 F.2d 1082, 1086-87 (9th Cir. 1985); SSR

22   82-61.

23   In this case, the vocational expert testified that the occupation

24   listed in the DOT that most closely resembled Plaintiff's work as a

25   frozen pizza packer was that of a frozen pie maker (DOT No. 529.684-

26   010). (AR 291.)  He then testified that the pie maker job was

27   unskilled and customarily performed at the medium level of exertion.

28   (AR 291.)  He testified, however, that, "as [Plaintiff] described it,

she would have performed it at the light level." (AR 291.)  He
explained that his opinion that Plaintiff's pizza packing work was
actually performed at the light level of exertion was based on
Plaintiff's testimony that she was obliged to lift and carry "up to 20
pounds and the written record indicates less than ten pounds
frequently, and less than ten pounds occasionally." (AR 292.)  The
ALJ explicitly relied on the testimony of the vocational expert that
Plaintiff "actually performed the job at the light level" in finding
that she could return to that work.[3] (AR 30.)  In other words, the
vocational expert's determination that Plaintiff actually performed
her work at the light level was key to the ALJ's finding that
Plaintiff could return to that work.

Unfortunately, as set forth below, the record contains three
different descriptions of the lifting and carrying requirements of
Plaintiff's past work as a pizza packer.  The ALJ's failure to develop
the record sufficiently to resolve this discrepancy means that his
finding that Plaintiff could perform her past relevant work is not
supported by the evidence and remand is necessary to resolve this
ambiguity.

First, in a Disability Report filled out on November 25, 2003,
Plaintiff indicated that the heaviest object she lifted at her pizza
packing job was "less than 10 lbs." (AR 92.)  Plaintiff also checked
a box indicating that the heaviest weight she *frequently* lifted on the

_____

[3] Given the ALJ's finding that Plaintiff was restricted to
lifting no more than ten pounds frequently and 20 pounds occasionally,
(AR 29), it is clear that she could not perform her past relevant work
as it is generally performed, since that would require working at the
medium level of exertion, according to the vocational expert's
testimony. (AR 291.)

13

1   job was less than ten pounds.  (AR 92.)  But she also checked a box
2   indicating that the heaviest object she lifted was 50 pounds.  (AR
3   92.)  No explanation was sought or given at the hearing for this
4   obvious discrepancy.

5        Second, Plaintiff indicated in a Spanish-language work-history-
6   report-form (apparently filled out on the same day) that the heaviest
7   weight she lifted, frequently or otherwise, at the pizza packing job
8   was less than ten pounds.  (AR 102.)  Third, at the September 20, 2005
9   hearing before the ALJ, Plaintiff testified through an interpreter
10  that the heaviest object she had to lift and carry in her work weighed
11  "like 20 pounds," further elaborating that she had to lift a box
12  containing about 20 frozen pizzas, and that the box weighed 20 pounds.
13  (AR 279.)  After the ALJ asked Plaintiff, "how many of the boxes did
14  you have to lift at any one time ...?," (AR 279), Plaintiff responded,
15  "All, all, everyday, all, all the, the whole time we were working, we
16  had to be lifting."  (AR 280.)  The ALJ did not attempt to clarify
17  Plaintiff's response.[4]

18       The vocational expert concluded that Plaintiff's work was
19  performed at the light exertional level based on Plaintiff's testimony
20  that she lifted "up to 20 pounds" and "on the written record" that
21  indicated that she lifted "less than ten pounds frequently and less
22  than ten pounds occasionally."  (AR 292.)  Neither the ALJ or the
23  vocational expert addressed the ambiguity in the evidence regarding

24

25       [4]  Plaintiff's testimony that she lifted 20 pounds "everyday ...
26  the whole time we were working" suggests, at a minimum, that she had
    to lift 20 pounds *frequently* rather than occasionally.  (*See* SSR 83-
27  10: "'Occasionally' means occurring from very little up to one-third
    of the time ... 'Frequent' means occurring from one-third to two-
28  thirds of the time.")

the heaviest weight Plaintiff had to lift at work and how often she
had to lift it.  On remand, the ALJ should first resolve the ambiguity
in the record and then, if necessary, question the vocational expert,
again.[5]

Plaintiff's final contention is that the ALJ failed to fully
develop the record when he neglected to order a consultative
examination to confirm Dr. Grogan's diagnosis that Plaintiff suffers
from carpal tunnel syndrome.  (Joint Stipulation at 35-37.)  This
claim is without merit.

Both the claimant and the ALJ bear a responsibility for
developing the record.  The claimant must produce medical evidence
showing that she has an impairment, and how severe that impairment is
during the time she claims that she is disabled.  20 C.F.R.
§§ 404.1512(c), 416.912(c).  Before deciding that a claimant is not
disabled, the ALJ must develop a claimant's complete medical history
for at least the twelve months preceding the month in which the
claimant files her application.  In doing so, the ALJ must make every
reasonable effort to help the claimant get medical reports from the
claimant's medical sources when the claimant gives permission to
request the reports.  20 C.F.R. §§ 404.1512(d), 416.912(d).  In

---

[5]  Because the vocational expert testified that he relied on
Plaintiff's own descriptions of her past work in determining that her
work as actually performed conflicted with the description provided in
the DOT, the Court rejects Plaintiff's argument that the ALJ was
nevertheless obliged, pursuant to *Massachi v. Astrue*, 486 F.3d 1149
(9th Cir. 2007), to separately inquire whether the job requirements
provided by the expert conflicted with the DOT requirements.  (*See*
Joint Stipulation at 29-30.)

15

addition, the regulations provide that the Agency should order a

consultative examination under certain circumstances. *See* 20 C.F.R.

§ 404.1519a(b).

   The ALJ's special duty to fully and fairly develop the record and

to assure that the claimant's interests are considered exists even

when the claimant is represented by counsel. *Smolen*, 80 F.3d 1288.

However, this duty is only triggered when there is ambiguous evidence

or an inadequacy in the record prevents a proper evaluation of the

disability claim. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.

2001); see also 20 C.F.R. §§ 404.1512(e) and 416.912(e).[6]

Furthermore, "[t]he ALJ is responsible for ... resolving conflicts in

medical testimony, and resolving ambiguities." *Edlund v. Massanari*,

253 F.3d 1152, 1156 (9th Cir. 2001).

   Here, there was sufficient evidence in the record to support the

ALJ's findings regarding Plaintiff's alleged carpal tunnel syndrome.

Although Dr. Grogan opined that Plaintiff suffered from carpal tunnel

syndrome, (AR 140-41), as discussed above, the ALJ rejected that

---

   [6]   The regulations provide:

      When the evidence we receive from your treating
      physician or psychologist or other medical source
      is inadequate for us to determine whether you are
      disabled, we will need additional information to
      reach a determination of a decision ... (1) ...
      We will seek additional evidence or clarification
      from your medical source when the report from your
      medical source contains a conflict or ambiguity
      that must be resolved, the report does not contain
      all the necessary information, or does not appear
      to be based on medically acceptable clinical and
      laboratory diagnostic techniques.

20 C.F.R. §§ 404.1512(e), 416.912(e).

diagnosis because it was unsupported by clinical evidence and was contradicted by the opinions of Drs. Sourehnissani and Alpern. (AR 153-58, 167-68, 286-89.) The record demonstrates that a consultative examination was obtained and that the consultative examiner did not diagnose carpal tunnel syndrome. (AR 153-58.) Nor was there ambiguity in Dr. Alpern's statement that a carpal tunnel syndrome diagnosis was "possible," (AR 287), because the balance of his testimony made clear that he rejected Dr. Grogan's functional assessment and, indeed, testified that Plaintiff's impairments, whether taken singly or in combination, would no more than minimally affect her ability to work. (AR 288.) Because the evidence in the record was adequate for the ALJ to make a determination regarding Plaintiff's carpal tunnel syndrome, he did not have a duty to recontact physicians or order additional consultative examinations. *See Bayliss*, 427 F.3d at 1217 (holding ALJ required to recontact doctor only if doctor's report is ambiguous or insufficient to make disability determination); *compare Tonapetyan*, 242 F.3d at 1150 (holding ALJ failed to develop ambiguous record where medical expert recommended obtaining more detailed report, found it "difficult to say" whether record was complete enough to determine whether claimant was disabled, and stated that he had "a difficult time" deciding between two differing reports regarding the claimant's functional restrictions).

1       For the foregoing reasons, the decision is reversed and the case

2  is remanded for further proceedings consistent with this opinion.

3       IT IS SO ORDERED.

4       DATED:     July  18  , 2008.

5

6

7                                   _____
                                    PATRICK J. WALSH
                                    UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  S:\PJW\Cases-Soc Sec\VALLEJO, A 1644\Memo_Opinion.wpd

18